IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| LYNDA L., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. CBD-18-1079 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| | ) |
| Acting Commissioner, | ) |
| Social Security Administration | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Lynda L. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 12, and Commissioner's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 14. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, and **REVERSES** and **REMANDS** the Administrative Law Judge's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

## I. Procedural Background

On February 2, 2015, Plaintiff filed for DIB under Title II, alleging disability beginning January 31, 2014. R. 16, 57-58, 60, 71. Plaintiff alleged disability due to "back injury, left shoulder injury, right shoulder injury, right foot injury, carpel tunnel right hand, asthma, osteopenia, degenerative disc, spinal stenosis, [and] arthritis." R. 59, 71-84. Plaintiff's claims were initially denied on July 13, 2015, and upon reconsideration on October 27, 2015. R. 16, 59-88, 92-93. An administrative hearing was held on January 17, 2017. R. 118. On February 14, 2017, the claim was denied. R. 13-26. Plaintiff sought review by the Appeals Council, which concluded on February 14, 2018, that there was no basis for granting the Request for Review. R. 1-14.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the administrative law judge ("ALJ") "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If she is doing such activity, she is not disabled. If she is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If she does not have such impairment or combination of impairments, she is not disabled. If she does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If she does have such impairment, she is disabled. If she does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If she can perform such work, she is not disabled. If she cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If she can perform other work, she is not disabled. If she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)-(c) (2012). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. § 404.1545(a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7

4

(S.S.A. July 2, 1996). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

### III. Analysis

In this case, the ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 16-26. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 31, 2014, the alleged onset date. R. 18. At step two, under 20 C.F.R. § 404.1520(c), the ALJ determined that Plaintiff has the following severe impairments: "lumbar degenerative disc disease, fibromyalgia, right carpal tunnel syndrome, osteopenia, right ulnar fracture, [and] obesity." R. 18. The ALJ stated that these impairments were "'severe'" as they "significantly limit[ed] the ability to perform basic work activities . . . ." *Id.* The ALJ also noted that Plaintiff was diagnosed with mental impairments of anxiety and depression but that those impairments were "non-severe" as they "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities . . . ." *Id.* In step three, the ALJ determined that Plaintiff "does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526)." R. 19. At step four, the ALJ determined that Plaintiff has the RFC to:

> [P]erform sedentary work as defined in 20 C.F.R. § 404.1567(a) except [Plaintiff] can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. She cannot climb ladders, ropes or scaffolds. She is also limited to occasional handling and fingering with right hand and frequently handling and fingering with the left hand. She should avoid concentrated exposure to hazards such as commercial driving, unprotected heights, and dangerous machinery.

R. 19-20. At step five, the ALJ determined that Plaintiff was unable to perform her past relevant work as a mail carrier. R. 25. However, the ALJ concluded that "there are jobs that exist in

5

significant numbers in the national economy that [Plaintiff] can perform." R. 25. The ALJ relied upon the testimony of a vocational expert when making this determination. R. 26. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

On appeal, Plaintiff argues that the Court should enter judgment as a matter of law in her favor, or in the alternative, remand this matter to the Social Security Administration (S.S.A.) for a new administrative hearing. Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl's Mem."), ECF No. 12-1. For the reasons set forth below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **REVERSES** the ALJ's decision, and **REMANDS** the matter for further proceedings.

### A. *The ALJ's Evaluation of Medical Opinion Evidence.*

Plaintiff argues that the ALJ failed to properly evaluate medical evidence in two situations. Plaintiff first argues that the ALJ erred by offering only a cursory explanation for the partial weight he afforded to the State agency physical assessment, which runs contrary to the statutory requirements. Pl.'s Mem. 8. Second, Plaintiff argues that the ALJ committed legal error by failing to evaluate and explain the weight he afforded to the consultative psychological examiner's opinion. Pl.'s Mem. 9. Commissioner counters that the ALJ did properly assess the State agency medical consultants' opinions. Mem. in Supp. Of Comm'r Mot. for Summ. J. ("Comm'r's Mem.") 6, ECF No. 14-1. Commissioner first argues that even if the ALJ had failed to properly assess the State agency physical assessment, the error would be harmless as the opinion asserted that Plaintiff needed fewer restrictions than the ALJ found in his RFC assessment. Comm'r's Mem. 6-7. Commissioner next argues that the ALJ considered the consultative psychological examiner's report as he discussed the examiner's findings in his

6

decision. Comm'r's Mem. 7. Commissioner further argues that the consultative psychological examiner did not offer an opinion as to Plaintiff's impairments or assess her limitations, therefore the ALJ did not need to state what weight he was giving to an opinion that was not included. Comm'r's Mem. 8. As the ALJ did discuss the report and there was no opinion therein to weigh, Commissioner argues any error the ALJ may have committed is also harmless. Comm'r's Mem.8.

An ALJ has a duty to explain his decision so as to enable meaningful judicial review. *See Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). "In determining whether [a claimant is] disabled, [an ALJ] will always consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [the ALJ] receive[s]." 20 C.F.R. § 404.1527(b). A denial of benefits is not supported by substantial evidence if the ALJ "has [not] analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits." *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) (citing *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977)); *see also Murphy*, 810 F.2d at 437 (holding that an ALJ failed to "explicitly indicate" the weight he afforded two medical opinions when he failed to provide the reasons for why he credited one doctor's opinion over another doctor's conflicting opinion); *Durham v. Apfel*, 225 F.3d 653, 2000 WL 1033060, at *5 (4th Cir. 2000) (*per curium*) (citing *Gordon*, 725 F.2d at 236) (stating an ALJ must "analyze[ ] all evidence and [ ] sufficiently explain[ ] the weight he has given to obviously probative exhibits" or it prevents judicial review). In situations where an ALJ gives controlling weight to a treating source's medical opinion, "the [ALJ] is not required to explain in the decision the weight he or she gave to the prior

7

administrative medical findings in the claim."[1] 20 C.F.R. § 404.1527(e). This requirement applies to both State agency medical and psychological consultants. *Id.*

When an ALJ fails to discuss how he came to a determination on the weight he assigns, remand is not always required; this is particularly the case when that failure results in only harmless error. *See, e.g.*, *Sharp v. Colvin*, 660 F. App'x 251, 257-58 (4th Cir. 2016) (holding an ALJ erred in assigning a treating physician's opinion "little weight" because the opinion conflicted with the ALJ's RFC assessment, but determining that this error was "harmless" as the "ALJ provided a second, specific reason" that the court deemed a sufficient explanation). "To determine whether an error was harmless, the Court must look at the record as a whole to determine whether the error altered the outcome of the case." *Daemer v. Berryhill*, No. 1:17-CV-01724-GLS, 2018 WL 4565571, at *2 (D. Md. Sept. 24, 2018) (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)). In situations where an ALJ has provided sufficient explanation for his decision and supported that explanation with substantial evidence, an "error can be considered harmless." *Id.* at *2-3 (holding an ALJ's failure to discuss a medical opinion was harmless "as the ALJ would have come to the same result if the opinion was discussed"); *see also Sharp*, 660 F. App'x at 257-58.

### i. The ALJ's Failure to Properly Evaluate the State Agency Physical Assessments was Harmless Error.

In this case, the ALJ's decision did not give any treating source's medical opinion "controlling weight." Accordingly, the ALJ was required to state the weight he afforded to any

---

[1] "[T]he ALJ is required to give 'controlling weight' to opinions proffered by a claimant's treating physician so long as the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (citing to 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)); *see also Sharp v. Colvin*, 660 F. App'x 251, 256 (4th Cir. 2016) (same).

8

medical opinions that he considered as well as a sufficient explanation as to how he came to his determination. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). In his decision, the entirety of the ALJ's discussion concerning the State agency physical assessment is as follows: "The State agency physical assessments were overly optimistic and merited only partial weight." R. 25. This cursory discussion offers no specifics or citations to any evidence in the record. Further, the ALJ's decision appears to be conclusory in nature as determining that the assessments in question were "overly optimistic" requires them to be compared with another assessment or evidence that is less optimistic as to Plaintiff's functionality. As the decision fails to include a satisfactory explanation as to why the ALJ found the State agency physical assessments "overly optimistic" or citations to any evidence in the record to support that determination, it is impossible to know what the ALJ compared the opinion to: other medical records in evidence or his ultimate RFC conclusion, which is impermissible. *Cf. Sharp*, 660 F. App'x at 257 (4th Cir. 2016) (stating that "the regulations do not allow an ALJ to consider whether a treating physician's opinion is consistent with the ALJ's residual capacity assessment when determining what weight to accord that physician's opinion").

While the ALJ failed to properly explain what weight he afforded to the State agency physical assessment and why he did not fully credit the assessment of Plaintiff's RFC, remand is not necessary on this issue as it would not have changed the outcome of Plaintiff's claim. The State agency physical assessment found Plaintiff to be limited to "light work" and only occasional climbing of ramps, stairs, ladders, ropes or scaffolds as well as occasional balancing, stooping, kneeling, crouching, and crawling. R. 67. It stated Plaintiff had no other limitations,

9

including no limitations in "manipulative" and "environmental" areas. *Id.* This RFC is less restrictive than what the ALJ determined Plaintiff would be able to do based on his review of the record. R. 19-20 (finding Plaintiff limited to "sedentary work" and that she "cannot climb ladders, ropes or scaffolds," that she is "limited to occasional handling and fingering with right hand and frequently handling and fingering with the left hand," and that "[s]he should avoid concentrated exposure to hazards such as commercial driving, unprotected heights, and dangerous machinery"). Even if the ALJ were to explain in what ways the State agency consultant's assessment was "overly optimistic," it would not change the outcome of Plaintiff's claim as fewer RFC limitations would mean Plaintiff still had the RFC to perform the jobs that the VE identified at step five. *Daemer*, 2018 WL 4565571, at *2. Accordingly, remand is not ordered on this issue.

### ii. The ALJ Failed to Provide a Sufficient Explanation for Possibly Conflicting Evidence in the Psychological Consultant's Opinion.

The second error Plaintiff raises to the Court's attention concerns the report conducted by the consultative psychological examiner, Dr. Deborah Harris. R. 697-708. Contrary to Commissioner's assertion, Dr. Harris did provide an opinion about a variety of limitations, or lack thereof, that Plaintiff has. These include her findings that Plaintiff "has had mild to moderate difficulty in carrying out activities of daily living." R. 707. Dr. Harris also noted that, "despite [Plaintiff's] report of changes in functioning, including her expressed concerns regarding cognitive abilities, this evaluation indicates [that Plaintiff] has retained her performance in basic areas of thinking and processing." *Id.* Plaintiff is correct that the ALJ's decision does not specifically address Dr. Harris' opinion nor does it provide any weight the ALJ might have afforded it. In light of the statutory requirements to evaluate every medical opinion and provide not only the weight afforded to it but also a sufficient explanation for why the ALJ

10

made that decision, the Court finds the ALJ erred in failing to specifically address Dr. Harris' opinion. Whether or not this error was harmless cannot be assessed by the Court at this stage. While Dr. Harris' report reads as though it supports finding only mild limitations in some functional areas, it also discusses "mild to moderate" limitations in activities of daily living. R. 699. This runs contrary to the ALJ's findings that Plaintiff had only mild limitations in the four functional areas. R. 18-19. However, the ALJ gave only brief, conclusory statements concerning the degrees of limitations he found for each of these functional areas, leaving the Court with no way to assess whether those decisions were based on substantial evidence and whether he considered Dr. Harris' opinion at all. It is the role the ALJ to weigh the evidence and resolve any conflicts therein. *Hays*, 907 F.2d at 1456 (stating that "it is not within the province of a reviewing court to determine the weight of the evidence"). Accordingly, remand is warranted for this issue. Upon remand, the ALJ is ordered to ensure that he specifically address Dr. Harris' opinion concerning Plaintiff's limitations—if any—in accordance with the relevant statutory provisions. The ALJ is further ordered to include an explanation as to how he came to his determinations as to the functional areas at step two and provide citations to specific pages in the record. It is the ALJ's responsibility, and not the Court's, "to 'build an accurate and logical bridge from the evidence to his conclusion'. . . ." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted).

### B. *The ALJ failed to properly assess Plaintiff's impairment of migraine headaches at Steps Two and Three of his analysis.*

Plaintiff also argues that the ALJ failed to specifically discuss her medically diagnosed migraine headaches in his evaluation of her impairments and further failed to offer an explanation as to why this impairment was not deemed to be "severe." Pl.'s Mem. 10. Plaintiff further asserts that the ALJ's failure to address her migraine headaches is not a harmless error as

11

"an assessment of migraine headaches as a severe impairment would likely result in a limitation of time off task in the ALJ's RFC determination in the decision." Pl.'s Mem. 10-11. Commissioner counters that the ALJ did sufficiently address Plaintiff's migraine headaches in his decision and that they were a "non-severe" impairment. Comm'r's Mem. 8-9.

As previously stated, at step two of the analysis, the ALJ must determine whether a claimant has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, then at step three of the analysis the ALJ determines whether the claimant has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). A finding that an impairment meets one of these two standards will result in a finding of disability in favor of the claimant. *See* 20 C.F.R. § 404.1520(a)(4)(ii)-(iii).

An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. An impairment is "severe" if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fourth Circuit has clarified that "an impairment can be considered as *not* severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th

Cir.1984) (emphasis added) (internal quotation marks omitted). Plaintiff has the burden of demonstrating that his impairment is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

An ALJ's failure to address a medically determinable impairment that is supported by evidence in the record may be reversible error. *See, e.g.*, *Hair v. Astrue*, No. 5:10-CV-309-D, 2011 WL 2681537, at *5 (E.D.N.C. June 16, 2011), *report and recommendation adopted,* No. 5:10-CV-309-D, 2011 WL 2693298 (E.D.N.C. July 11, 2011) (holding "[t]he ALJ's failure to provide an explanation of his handling of the shoulder impairment at step two was error"). In cases where the evidence indicates that the overlooked impairment would likely be deemed "severe," courts have deemed it to be reversible error. *See, e.g.*, *id.* ("The [ALJ's] reasons [for failing to address the impairment at step two] are not otherwise apparent given the medical and other evidence tending to show that it is severe and the ALJ's RFC determination imposing restrictions relating to the shoulder impairment."). However, not every occurrence where an ALJ makes a step-two error requires remand of a disability determination. For example, the Fourth Circuit has held that if an impairment the ALJ considered is "inclusive" of the symptoms of the overlooked impairment, remand may not be necessary. *See, e.g.*, *Bryant v. Colvin*, 571 F. App'x 186, 188 (4th Cir. 2014) (holding that a plaintiff's "major depressive disorder" was "taken into account" where one of the severe impairments the ALJ explicitly considered was "bipolar depression," which according to the court is "inclusive of the symptoms of major depressive disorder and, therefore, the two disorders are mutually exclusive"). However, where there is no indication that the symptoms of the impairment were considered in one or more steps of the sequential analysis, it is insufficient that the ALJ considered the symptoms in a later step. *See Hair*, 2011 WL 2681537, at *6–7. "Such an approach subverts the integrity of the basic framework of the five-step sequential analysis." *Id.*; *see also, e.g., Parris v. Barnhart,* No.

03C251, 2004 WL 3008744, at *13 n. 2 (N.D. Ill. 28 Dec. 2004) (holding that "[i]n making his determination, the ALJ improperly skipped step three of the analysis . . . . The ALJ is required to perform the five-step evaluation *in sequence* and is not allowed to skip step three.").

Migraine headaches are an impairment that, by itself, can be classified as severe at step two. *See, e.g.*, *Fetter v. Comm'r, Soc. Sec. Admin.*, No. 15-2250-JMC, 2016 WL 3646850, at *1 (D. Md. July 7, 2016) (noting that the plaintiff was found at step two to suffer from several severe impairments, including migraine headaches). Here, evidence in the record shows that Plaintiff suffered from and was treated for migraines. *See* R. 896 (noting that "[Plaintiff] has longstanding history of migraines, not controlled" and prescribing Topamax "for migraines"). In fact, there is evidence in the record that states that even with medication, in September 2016 "[Plaintiff's] migraines are two to three times a month, but they last four days, nothing to abort it except Aleve." R. 900. Plaintiff also raised the issue of her migraine headaches during the hearing and discussed with the ALJ the impact that they had on her. R. 37, 48-49 (stating that her migraines last "sometimes between an hour and my last one was four days"), 50-51 (stating that to treat her migraines, Plaintiff takes medication, lays down, uses an ice pack, and waits for it to pass, during which time she cannot function). Despite this, the ALJ made no mention of migraine headaches or even allude to them as symptoms in either step two or step three of his analysis. *See* R. 18-19. Further, the ALJ did not consider an impairment at step two or three that might have had symptoms that included migraines; the entirety of the ALJ's discussion of non-severe impairments addressed only anxiety and depression.[2] R. 18. Accordingly, the Court

---

[2] "Anxiety" is in a category of disorders that are

> [C]haracterized by excessive anxiety, worry, apprehension, and fear, or by avoidance of feelings, thoughts, activities, objects, places, or people. Symptoms and signs may include, but are not limited to, restlessness, difficulty

14

agrees with Plaintiff that the ALJ erred in failing to consider this medically determinable impairment in step two and even step three of his analysis.

While the ALJ did address Plaintiff's migraine headaches in another area of his analysis, this was insufficient to correct the ALJ's steps two and three errors. Specifically, during his assessment of Plaintiff's RFC, the ALJ noted that Plaintiff complained of migraines to her doctors, that she was diagnosed with migraines, and received treatment for them. *See* R. 20, 23-24. In concluding that the evidence showed Plaintiff's symptoms were not actually as intense, persistent, or limiting as Plaintiff alleged, the ALJ stated: "[Plaintiff's] alleged frequency of headaches was not documented. She has only a few headaches a month, not several, according to her records. Regardless, they were helped with additional medication." R. 24 (providing no citations to evidence in the record). While this appears to indicate that the ALJ considered Plaintiff's migraine headaches were not a severe impairment, it fails to resolve the fact that the migraines were reported to "last four days." R. 900. A conservative estimate of the frequency of migraines would have then lasting between 8 to 12 days a month. The Court finds it hard to

---

concentrating, hyper-vigilance, muscle tension, sleep disturbance, fatigue, panic attacks, obsessions and compulsions, constant thoughts and fears about safety, and frequent physical complaints.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. "Depression" is in a category of disorders that are

[C]haracterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning. Symptoms and signs may include, but are not limited to, feelings of hopelessness or guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria, and social withdrawal.

*Id.*

15

believe that migraines of that length would have "such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Evans*, 734 F.2d at 1014. Without specifically addressing this issue at step two of his analysis, the ALJ has left the Court with no understanding of how this impairment was considered. Furthermore, the Court cannot ascertain what affect Plaintiff's migraines would have on the ALJ's step three analysis if they were deemed "non-severe" and assessed in combination with the other non-severe impairments. As previously discussed, the ALJ's step two analysis is lacking in sufficient explanation and details to allow for a meaningful judicial review. It only specifically mentions anxiety and depression as non-severe impairments, leaving the Court to speculate as to the interplay between those two impairments and any other non-severe impairments Plaintiff might have, including migraine headaches. Accordingly, the Court agrees with Plaintiff that the ALJ erred in failing to consider Plaintiff's migraines in step two of his analysis. Further, the Court does not find this error to be harmless as the cursory nature of the ALJ's analysis not only at step two but also at step three leaves the Court without a sufficient understanding as to whether the impairment was considered at all. Therefore, remand is warranted on this issue.

## IV. Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **REVERSES** the ALJ's decision, and **REMANDS** this matter for further proceedings in accordance with the instructions articulated in these findings and in this Court's prior rulings.

May 8, 2019 /s/
Charles B. Day
United States Magistrate Judge

CBD/clc